## HARRY BARON
vs.
## CITY OF HARTFORD

Superior Court        Hartford County        File #54098

Present: Hon. PATRICK B. O'SULLIVAN, Judge.

Aaron Nassau,                    Attorney for the Plaintiff.

Corporation Counsel,             Attorney for the Defendant.

**MEMORANDUM FILED AUGUST 4, 1936.**

O'SULLIVAN, J.  On June 23, 1936, the defendant City
through its Board of Contract and Supply advertised for bids

for furnishing approximately five hundred thousand (500,000) gallons of range oil for the Department of Public Welfare. Two concerns made bids, the one being Hygrade Oil Company, Incorporated, the other, the Southern New England Ice Company. The proposal of the former was to furnish oil throughout the year at $.06625 a gallon; that of the latter was to furnish oil at $.0694. In addition to this flat bid, and as an alternative, the Ice Company offered to furnish oil at a price which would be two (2c) cents above the New York Harbor tank car market on the date of delivery. The Board gave the contract to the Ice Company on its alternative bid.

The matter comes before the undersigned on the petition of one Harry Baron, a taxpayer of the City, who desires injunctive relief for various reasons. Although there is merit to at least one other ground than that to which reference will be made, it is sufficient for the purposes of the problem presented to discuss but one phase of the action of the board.

The Charter of the City of Hartford requires the the Board of Contract and Supply to make an award to the lowest responsible bidder. As the Board concedes the Hygrade Company to be responsible, the problem resolves itself into the query who was the lowest bidder. Manifestly the Hygrade bid is substantially lower than the flat bid of the Ice Company. Hence we may further limit the extent of the problem by inquiring whether the alternative bid of the Ice Company is lower than the flat bid of the other concern.

The difficulty with the Ice Company bid is that until the year shall have passed nobody will know with any degree of reasonable certainty what the price of oil will be to the City of Hartford. To ascertain what this alternative bid of the Ice Company will amount to will call for more prophetic vision than anyone possesses. To be sure, on the date of the bid, the New York Harbor price was $.04625 and on that basis the cost to the City for oil delivered on that day would be $.06625, or a sum exactly the same as the flat bid of the Hygrade Company. The New York Harbor price is, however, a variable figure. A survey of prices in the past lays a reasonable basis for concluding that the June price is uniformly the lowest throughout the year and that during the winter months when deliveries will be made, the price is customarily higher. How much more the City will pay next winter than now is a matter of conjecture made more serious

were there to be realized these prophecies which periodically promulgate the catastrophies of inflation.

One cannot tell which of two figures is lower unless he knows both figures. If the index of the past performances of range oil price is to furnish any help, the Ice Company's figure will be considerably higher than $.06625 per gallon.

Because of the restrictive language of the Charter which demands that the Board of Contract and Supply award a contract to the lowest bidder, the Board is powerless to act when it cannot ascertain with reasonable certainty the extent of the City's expenditure for oil.

A judicial official should be extremely reluctant to interfere with the machinery of municipal government, and were the Charter not so explicit, no action would be taken in this case. However, the conduct of the Board is circumscribed by the terms of the Charter too unmistakable in significance to permit the award to the Ice Company to stand. It is conceivable, though highly improbable, that the price of oil may drop with a consequent saving to the City, but the philosophy of our type of government places about the conduct of public officials a series of hedges which are notably absent in private industry. These barriers while often arbitrary and at times expensive to a municipality, find their justification in the inability of those entrusted with power to use it against the common good. It should be thoroughly understood that the facts in the instant case furnish not the slightest basis for an inference of impropriety on the part of the Board of Contract and Supply. The petitioner makes no such claim, and had he so done, I would not agree with him.

Accordingly a temporary injunction may issue in conformity with the requested relief set forth in the complaint, and this memorandum is certified to the Superior Court.